## LAUDERDALE COUNTY v. KITTEL et al.

### (Circuit Court of Appeals, Fifth Circuit.    February 11, 1916.)

### No. 2803.

**1. Highways ⬤➞113—Construction Contracts—Parties Liable.**

Const. Miss. 1890, § 170, provides that the board of supervisors shall represent the county in the management of its affairs and have full jurisdiction over the roads of the county. Laws Miss. 1910, c. 149, was entitled: "An act authorizing the board of supervisors to construct and maintain public roads in any one or more supervisors' districts of the various counties of the state; to issue bonds and levy taxes for that purpose; and providing for the manner in which said roads shall be constructed and maintained; and how bonds shall be issued and taxes levied for that purpose." It was amended by Laws 1912, c. 145. In the original act the caption of section 1 read: "Board of Supervisors Authorized to Construct Highways and Provide Funds Therefor." That section provides that the board of supervisors of any county is thereby authorized and empowered to construct and maintain one or more highways by contract in any one or more supervisors' districts, and for that purpose to issue and sell bonds, levy and collect taxes, and maintain such roads as therein provided. Section 5 provides for the appointment of road commissioners in districts in which roads are so to be constructed, and provides that they shall have the management and supervision of the construction and maintenance of roads built thereunder, subject to the approval of the board of supervisors, and subject to such approval shall determine and fix the roads to be constructed and maintained, let all contracts, etc., all acts done by them to be subject to ratification or rejection by the board of supervisors. It divides the county into road districts, and provides for the issuance of bonds of the district in which roads are to be constructed, and for the levy of taxes on the property in such district, but the bonds are to be executed by the president of the board of supervisors and countersigned by the clerk, and to be under the seal of the county. The taxes and proceeds of the bonds are to be kept as a separate fund by the county treasurer, and it is provided that the board of supervisors shall levy an annual tax on the recommendation of the commissioners, which shall be used to supplement the general road fund of the county in maintaining the roads provided for therein. *Held*, that the road districts are not corporate entities, separable from the counties, but are mere geographical subdivisions thereof for administrative purposes, and the road commissioners are mere subordinate county officers, and in signing contracts represent the county, and hence the county may be sued on such a contract.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 348–352, 355; Dec. Dig. ⬤➞113.]

**2. Courts ⬤➞366—United States Courts—State Laws as Rules of Decision.**

The decision of a state court of last resort as to the construction of a state statute is binding upon a federal court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. ⬤➞366.]

**3. Appeal and Error ⬤➞1039—Harmless Error—Rulings on Pleadings.**

Where, under the declaration and the general issue, with notice of special matters of defense, the parties were permitted to give in evidence all matters of offense, defense, and reply, they could have suffered no injury from any rulings on the pleadings.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4075–4088; Dec. Dig. ⬤➞1039.]

⬤➞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

229 F.—38

**4. APPEAL AND ERROR ⬡1052—HARMLESS ERROR—ADMISSION OF EVIDENCE—CURE.**

An objection to the admission of a letter in evidence on the ground that it was a copy was cured by the subsequent introduction of the original.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4171–4177; Dec. Dig. ⬡1052.]

**5. EVIDENCE ⬡121—RES GESTÆ.**

In a contractor's action for damages from the refusal of the defendant county to permit him to complete a highway construction contract, evidence that plaintiff replied to a notice to discontinue work under the contract, and did not by silence acquiesce in the decision of the road commissioners, was a part of the res gestæ and admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 303, 307–338, 1117, 1119; Dec. Dig. ⬡121.]

**6. TRIAL ⬡54—RECEPTION OF EVIDENCE—LIMITING EFFECT—REQUEST.**

In a contractor's action against a county for damages from the county's refusal to permit him to complete a highway construction contract, there was admitted in evidence a letter written by plaintiff in reply to a notice from the road commissioners to discontinue the work. *Held* that, as this was admissible to show that plaintiff did not acquiesce in the decision of the commissioners, the failure to restrict its effect to this purpose was not error, in the absence of a request that it be so limited.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 126–128; Dec. Dig. ⬡54.]

**7. PLEADING ⬡381—ISSUES—EVIDENCE ADMISSIBLE.**

In a contractor's action for damages from the refusal of the defendant county to permit him to complete a highway construction contract, where the pleadings presented the question of the good faith of the county's engineer in reporting to the road commissioners that plaintiff was unnecessarily delaying the work, evidence that the engineer was in collusion with the representative of plaintiff's surety to substitute another and favored contractor in the completion of the work was admissible, as any evidence tending to show good faith or lack of good faith was admissible, though not specially pleaded; the pleadings not being required to set out the evidence.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1238, 1253–1279; Dec. Dig. ⬡381.]

**8. EVIDENCE ⬡116—RELEVANCY—ACTIONS FOR BREACH OF HIGHWAY CONSTRUCTION CONTRACTS.**

Where, in a contractor's action for damages from the refusal of the defendant county to permit him to complete a highway construction contract, plaintiff was permitted to prove that one of the county's attorneys admitted that the county had retained a fund of $25,000 to answer any judgment that might be recovered against it by plaintiff, the county should have been permitted to show that no such fund was retained, as the alleged admission could be rebutted, either by evidence tending to show that it was not made or by evidence tending to show that it was in fact untrue.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 134, 135; Dec. Dig. ⬡116.]

**9. APPEAL AND ERROR ⬡1058—HARMLESS ERROR—EXCLUSION OF EVIDENCE.**

Where, in such action, a witness had, without objection, testified that no such fund had been retained, and that the sum in the road fund did not amount to the sum said to have been retained, defendant was not injured by the refusal to permit the witness to reiterate this statement.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4195, 4200–4204, 4206; Dec. Dig. ⬡1058.]

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**10. WITNESSES** ☞268—EXAMINATION—CROSS-EXAMINATION.

In a contractor's action for damages from the refusal of the defendant county to permit him to complete a highway construction contract, plaintiff claimed that the county's engineer, in reporting that he was unnecessarily delaying the work, did not act in good faith, but was in collusion with a representative of plaintiff's surety and the H. Co., and made such report for the purpose of eliminating plaintiff and substituting the H. Co. in the completion of the work. Witnesses for the county were permitted on cross-examination to testify to previous transactions between the county, through its road engineer and road commissioners, and the H. Co., tending to prove that favoritism had been shown that company. *Held* that, in view of the suggestion of collusion, it was within the discretion of the court to permit this cross-examination.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 931–948, 959; Dec. Dig. ☞268.]

**11. TRIAL** ☞45(3)—OFFER AND PROOF.

In such action, the exclusion of evidence as to the circumstances attending the payment to the H. Co. on former contracts of the retained percentage in advance of the time when it was legally payable was not erroneous, where defendant made no specific statement as to what it expected to prove, other than that the engineer had nothing to do with this premature payment, and the witness was permitted to and did testify that the engineer had nothing to do with procuring the reserved percentages to be paid in advance of the legal time of payment.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 113; Dec. Dig. ☞45(3).]

**12. HIGHWAYS** ☞113 — HIGHWAY CONSTRUCTION CONTRACTS — ACTIONS — QUESTIONS FOR JURY.

In a contractor's action against a county for breach of a highway construction contract, which stated the price of one item of work as 19¾ cents a yard, defendant contended that the understood price was 19¼ cents a yard, and there was evidence that at the meeting of the road commissioners, at which plaintiff's bid was accepted, the clerk read the bid as 19¼ cents for such item, and that plaintiff said nothing. There was also evidence, however, that subsequent estimates were made and paid on the basis of 19¾ cents, and that after the contract was taken over by plaintiff's surety payments were made to it on the same basis. *Held*, that this practical construction of the contract by the parties made it a question for the jury as to whether there was a meeting of the minds when the contract was executed regarding the price to be paid.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 348–352, 355; Dec. Dig. ☞113.]

**13. HIGHWAYS** ☞113—HIGHWAY CONSTRUCTION CONTRACTS—BREACH—DECISION OF ENGINEER.

A highway construction contract provided that the good roads commission reserved the right to declare the contract forfeited if at any time it should appear to the engineer that the work or any part thereof was being unnecessarily delayed, and that under such conditions the contractor would be notified in writing to discontinue the work, and that all money due him, as well as his bond, would be held to protect the county from any loss in the completion of the work. The contractor's bond provided that the surety should at its option have the right, upon default of the contractor, to complete the work, and should be entitled to such benefits and emoluments as might then be due the contractor. The engineer reported to the commission that the work was being unnecessarily delayed, and the commission adopted a resolution providing that notice be given to the contractor and the surety for the contractor to discontinue work, and that unless the surety should forthwith take charge of

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

the work and undertake the performance of the contract the commission would forfeit the contract, and contract with other parties for the performance of the contract. *Held*, that the opinion of the engineer that the work was being unnecessarily delayed was not final and conclusive, unless the commission forfeited the contract, and as the commission purposely refrained from declaring the contract forfeited, and merely threatened to forfeit it, in order to avoid releasing the surety, the engineer's opinion was not final, and in the contractor's action for breach of the contract the issue was whether the work had in fact been so unnecessarily delayed that it could not reasonably have been completed within the time allowed by the contract.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 348–352, 355; Dec. Dig. ☞113; Contracts, Cent. Dig. § 1335.]

14. APPEAL AND ERROR ☞1033—HARMLESS ERROR—ERRORS FAVORABLE TO APPELLANT.

As the county in such action was entitled to no instruction whatever as to the conclusiveness of the engineer's opinion, an instruction on that subject was favorable to it, and could not be complained of by it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4052–4062; Dec. Dig. ☞1033.]

15. HIGHWAYS ☞113—HIGHWAY CONSTRUCTION CONTRACTS—ACTIONS—INSTRUCTIONS.

In such action, instructions that the burden was on plaintiff to establish by a preponderance of the evidence all of the facts necessary to sustain its insistence, that if plaintiff was not in good faith prosecuting the work required of him, or was so environed that it could not in reason be expected that he would complete the work within the time specified in the contract, the verdict should be for defendant, and that if plaintiff began work under the contract, and was prosecuting it with such diligence that he would reasonably have completed the work within the time allowed by the contract, the verdict should be for plaintiff, fairly presented the issue which was determinative of the merits.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 348–352, 355; Dec. Dig. ☞113.]

In Error to the District Court of the United States for the Eastern Division of the Southern District of Mississippi; Henry C. Niles, Judge.

Action by J. O. Kittel, trading as the Tennessee Stable & Transportation Company, and others, against the County of Lauderdale. Judgment for plaintiffs, and defendant brings error. Affirmed.

This is a writ of error from a judgment in favor of the plaintiff in the court below, Kittel, who is the defendant in error in this court, and against the defendant in that court, the county of Lauderdale, which is the plaintiff in error in this court. The action was for the alleged breach of a contract, entered into between the plaintiff, Kittel, and the road commissioners of district No. 1, Lauderdale county, for the building by the plaintiff of certain public roads, on the terms therein prescribed and for the compensation therein fixed. The plaintiff entered into the performance of the contract, and after having been engaged thereon some six months was notified by the road commissioners, pursuant to a resolution adopted by them on December 27, 1913, to discontinue work, which the plaintiff thereafter did, whereupon the road commissioners permitted one of the sureties on the bond given by the plaintiff to secure the performance of the contract to enter upon and complete the work under the original contract, through a construction company employed by the surety for that purpose. The plaintiff thereupon instituted this action to recover the damages claimed to have been suffered by him because of not having been allowed to complete his contract. The suit was instituted against the county

of Lauderdale, and not against the road commissioners of district No. 1 of that county. The plaintiff recovered a judgment in the court below, to review which this writ of error was sued out by the county of Lauderdale. There are 59 errors assigned on the record, not all of which were relied upon in the briefs or upon the argument. The two principal questions presented are: (1) The liability of the county of Lauderdale to be sued upon the contract of the road commissioners of district No. 1, Lauderdale county; and (2) the effect to be given the finding of the engineer of the road commissioners that the work, under the contract by the original contractor, Kittel, at the time it was ordered discontinued, was being unnecessarily delayed. Other assignments relate to various rulings during the progress of the trial, and such as are stressed in argument or brief are considered by us in this opinion.

C. C. Dunn, A. S. Bozeman, and A. B. Amis, all of Meridian, Miss., for plaintiff in error.

C. D. Christian, of Meridian, Miss., and Harry S. Stokes and T. T. McCarley, both of Nashville, Tenn., for defendants in error.

Before PARDEE and WALKER, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge (after stating the facts as above). [1] The question which presents itself on the threshold is the liability of the defendant to be sued on the contract of the road commissioners of district No. 1. The first and fifty-sixth assignments of error present the question. The contention of the plaintiff in error, in that respect, is that the act of the Legislature of Mississippi, authorizing the creation of road districts in the various counties of the state, and authorizing the commissioners of such districts, when created, to contract for the building of roads in such districts, should be construed as having the effect of creating the districts, when organized, municipal corporations, which were separate legal entities from the counties in which they existed, and alone responsible for and suable on the engagements entered into by them. The defendant in error's opposing contention is that the effect of the act was merely to provide administrative agencies of the existing county governments, through the creation of the road districts, through which the work of road building in the counties could be subdivided into smaller units, and more conveniently and efficiently accomplished, than by the general officers of the county, such general officers being required to retain the supervision of the work and the expenditure of funds in the various districts and of the commissioners in their management thereof, and that the road districts provided for by the act were not separate corporate entities, were not subject to be sued as such on the contracts made by their commissioners; that such contracts were the engagements of the counties, whose representatives the commissioners were; and that the counties were alone suable thereon.

The act of the Legislature of Mississippi, authorizing the creation of road districts and the appointment of road commissioners for them, was approved March 3, 1910, and is known as chapter 149 of the Laws of Mississippi of 1910. It was amended by an act approved March 11, 1912, and known as "chapter 145 of the Laws of Mississippi of 1912." The record shows that district No. 1, Lauderdale

county, was legally organized under these acts, and that the contract sued on was entered into by road commissioners of that district with the defendant in error.

We have reached the conclusion that the suit was properly instituted against the county of Lauderdale as defendant. The title of the original act, viz., "An act authorizing the board of supervisors to construct and maintain public roads in any one or more supervisors' districts of the various counties of the state; to issue bonds and levy taxes for that purpose; and providing for the manner in which said roads shall be constructed and maintained; and how bonds shall be issued and taxes levied for that purpose," clearly indicates that the board of supervisors of the counties, and not the road commissioners of the districts, were regarded by the Legislature as the body intrusted with the ultimate duty of road construction and maintenance in the districts created by it. The caption of section 1 of the act is also persuasive of the idea that the Legislature intended to place on the supervisors, as representing their counties, the duty of road construction, and the caption of this section in the amended act is consistent with this idea. The former is "Board of Supervisors Authorized to Construct Highways and Provide Funds Therefor;" that of the amended act, "Public Highways—How Counties may Construct the Same." The section itself imposes the duty of the construction and maintenance of highways, and the issuance and sale of bonds therefor, and the levy of taxes to pay the bonds issued, and to maintain the roads constructed, on the supervisors of the county. Section 5 provides for the appointment of road commissioners by the county board of supervisors and their duties. Their duties are defined to be:

"To have the management and supervision of the construction and maintenance of the roads built under the provisions of this act, subject to the approval of the board of supervisors; and for their services shall be paid their actual expenses, not exceeding fifty dollars each, per annum; and it shall be the duty of such commissioners, subject to the approval of the board of supervisors, to determine and fix what road or roads shall be constructed and maintained in such district or districts out of the proceeds of the sale of such bonds and the levy of such taxes; and it shall be their duty to let all contracts for the construction and maintenance of such roads in the manner now provided by law for the letting of contracts for public work by the board of supervisors; and it shall be their duty to employ a competent engineer to survey and lay out such road or roads in such district or districts, as they shall determine upon."

The section then proceeds to define the duties of the engineer so selected and to provide that his estimate and survey shall be adopted or rejected by the commissioners, and their action spread upon their minutes, and that all acts done by the commissioners shall be subject to ratification or rejection by the board of supervisors.

The character of the duties imposed on the commissioner, and the requirement that in the performance of them they are subject to the approval of the supervisors, clearly demonstrates that the purpose of the Legislature was merely to create a subordinate administrative agency to relieve the supervisors of the direct management and supervision of road construction and maintenance in the road

districts, just as might have been done by the appointment of an individual road supervisor in each district. The purpose of the division of the county into road districts, the bonds of which were to be issued to provide for the construction of roads in each district, and to be paid by the levy of taxes on the property in each district, was to geographically distribute the burden according to the special benefits and to reduce the size of the unit, so that the management and supervision might be the more effective. The ultimate control in all matters was retained in the county through its supervisors. The letting of all contracts, the employment of the engineer, the determination of the particular roads to be built, and the approval or rejection of the engineer's survey and estimates were all administrative details, not beyond the authority of an employed superintendent, in view of the fact that they were all subject to the approval or rejection of the board of supervisors. The contracts of the commissioners were of no force till approved by the county supervisors, and they then became the contracts of the counties.

The bonds are expressly required by the act to be executed by the president of the board of supervisors, and countersigned by the clerk of that board, and to bear the impress of the seal of the county. They are the bonds of the county, though issued for the account of a particular road district, the property in which is primarily liable for their payment. The county, however, is the obligor, and would be the proper party defendant in an action to enforce them. It is true that the proceeds of bonds sold and the taxes levied are directed to be kept as a separate fund by the county treasurer, whose bond is made liable for their safe-keeping; but this is made necessary, since the bonds are payable primarily out of the fund derived from taxes collected on the property in each road district, and the proceeds of the bonds are to be used exclusively for the construction of roads in that district. That there is not an entire separation of the administration of the district roads from that of the county roads appears from section 6 of the act. It provides:

"That the public highway or highways, so surveyed and adopted by such commissioners, shall be constructed and maintained out of the proceeds of such bonds; proceeds of such bonds to be used alone in their construction; and the board of supervisors shall levy an annual tax on the recommendation of such commissioners on all the taxable property in such district or districts of not exceeding one mill on the dollar, *which shall be used to supplement the general road fund of the county* in maintaining said road or roads and the culverts, bridges and levees thereon."

That the Legislature of Mississippi intended to divest the county, through its supervisors, of jurisdiction over all roads in the various districts, is unlikely in view of the probable conflict of such an attempt with section 170 of the Constitution of the state, which provides that the board of supervisors shall represent the county in the management of its affairs, and have full jurisdiction over the roads of said county.

Looking at the language of the act, and the purpose to be subserved, and the constitutional provision necessarily considered by the Leg-

islature, we are of the opinion that the road districts are not separable corporate entities from the counties, but mere geographical subdivisions thereof for administrative purposes, and that the road commissioners are mere subordinate county officers, exercising their functions within the limits of such subdivisions, and that in signing contracts for the construction of roads the corporate entity they represent was the county, and not the road districts.

The case of Meath v. Phillips County, 108 U. S. 553, 2 Sup. Ct. 869, 27 L. Ed. 819, is different in its facts from this case. In that case levee districts were created by the Legislature out of lands in different counties for the purpose of reclaiming the lands in such districts and of taxing the lands in the districts created to provide for the expense incurred. The act provided for levee inspectors and a treasurer, officers independent of any county organization. The levee districts might comprise lands in more than one county, and hence were not mere subdivisions of the county territorially, and could not be considered such for administrative purposes. The unit created was more extensive than the county, and so could not be a political subdivision of it. The county courts and the sheriffs were required by the act to perform certain services for the levee district, in the doing of which the Supreme Court held they acted as the representatives of the district, and not of the county. The conclusion reached was that the districts used the machinery of the counties already in existence for district purposes, and that the counties were not thereby involved. The Supreme Court in its opinion, distinguishing that case from the cases of County of Cass v. Johnston, 95 U. S. 360, 24 L. Ed. 416, and Davenport v. Dodge County, 105 U. S. 237, 26 L. Ed. 1018, as presenting entirely different facts, say (108 U. S. at page 555, 2 Sup. Ct. at page 870 [27 L. Ed. 819]):

"In the case of the County of Cass, the law provided in terms for an issue of bonds in the name of the county, and in that of Davenport we construed the law to be in effect the same. Consequently there were in those cases obligations of the counties, payable out of special funds. Here, however, there was a manifest intention to bind the levee districts only by the obligations incurred, and not to make the county, in its political capacity, responsible for the payment of the debts that were created for levee purposes under these laws. The machinery of the county was to be used in the levy and collection of the special taxes required, but the county, as a county, was to be in no way involved."

In this case the act imposes on the county the duty of building the roads, and makes the bonds issued therefor the obligations of the county, and merely creates additional county machinery, in the road commissioners distributed among the various districts, for convenience of administration. As the use of the machinery of the county by the levee districts in the Cass and Davenport Cases was held not to involve the county, so the creation of additional machinery by the Legislature for the use of the county, in performing its constitutional functions with relation to public roads, should not be held to release the county from liability, where it would otherwise have been so.

The Supreme Court of Mississippi has so construed this same act in the case of Prather v. Googe, 67 South. 156. The court said (page 159), referring to assignments of error based upon the claimed conflict of the act with section 170 of the Mississippi Constitution:

"They all proceed upon the idea that the Legislature has undertaken to create taxing districts or corporations with powers of taxation, or to carve out of a supervisor's district a separate and distinct taxing district, with indefinite powers. The vice of this conception is made apparent by a mere reading of the law. The bill is drawn with due regard to the plenary jurisdiction over roads vested in boards of supervisors by section 170 of the state Constitution, and this thought runs through every word and phrase of the act. The exercise of the powers given by the act and the carrying out of the scheme is placed where it belongs, in the control and under the jurisdiction of boards of supervisors. The methods for the construction and maintenance of public roads, and the means through which the funds necessary to this end may be obtained, is a proper subject of legislation, and are without objection, unless they in terms or by necessary implication take away from boards of supervisors the powers conferred by the Constitution. Nothing can be found in the act justifying the inference that the Legislature was undertaking to confer upon a separate taxing district, or corporate entity, jurisdiction over public roads, or the power to levy taxes upon persons or property. For convenience, and in order to identify the property to be assessed for the purpose of securing funds to liquidate the bonds to be issued, the act provides that boards of supervisors will issue the bonds of the district, upon which special benefits are conferred. The district gets the benefit of the general plan for working roads, and something more, and this something more is the thing the district is required to pay."

[2] The validity of county road bonds, issued under this act, was under consideration by the court. The act was assailed as being in conflict with section 170 of the Mississippi Constitution, in that it infringed upon the plenary jurisdiction of the county boards of supervisors over public roads, by conferring a part of this jurisdiction on separate entities; i. e., the road commissions of the road districts created under it. The court reached the conclusion that the act did not conflict with section 170, by holding that the road districts were not separate entities, but parts of the machinery of the counties; that the bonds were the bonds of the counties, though having as security for their payment the taxing power of the governments of the counties to be exerted upon the property peculiarly benefited by the special improvement. It cannot be said that this holding was unnecessary to the decision of the case, since it was an important and necessary part of the process of reasoning by which the court reached its decision. The decision of the state court of last resort upon the construction of its statute is binding upon us, had we not reached the same conclusion.

[3] The assignments of error which relate to questions of pleading (numbered 3, 53, 54, and 55) may be dismissed with the statement that the parties, under the declaration and the general issue with notice of special matters of defense, were permitted to give in evidence all matters of offense, defense, and reply, and could have suffered no injury from any rulings on the pleadings.

[4-6] The sixth assignment is based upon the introduction against plaintiff in error's objection and exception of a letter which the de-

'fendant in error wrote to Broach, the then chairman of the road commissioners. The letter was objected to, because it was a copy; but this objection was cured by the subsequent introduction of the original. The further objection was that it was a self-serving declaration of the defendant in error, after the controversy had arisen. It was written in reply to the notice served upon defendant in error by the road commissioners to discontinue work under his contract, because the work had been, in the opinion of the engineer, unnecessarily delayed. The fact that defendant in error did reply to the notice, and did not by silence acquiesce in the decision of the commissioners, was a part of the res gestæ, and admissible. If the plaintiff in error had asked the court to so limit the effect of the letter, it would doubtless have charged the jury not to consider the statements in the letter as evidence of the truth of the facts stated. The objection was to its admission at all. If admissible for any purpose, the court cannot be put in error for not restricting its effect, in the absence of a request to do so.

[7] The assignments numbered 8, 10, and 11 relate to the admission against the objection and exception of plaintiff in error of evidence of conferences and dealings between defendant in error and his wife and the representative of the surety on his bond, after the alleged forfeiture of the contract. One question, arising on the trial, was as to the relation that existed between the road commissioners' engineer, whose opinion was relied upon by the commissioners in taking the action they did, and the representative of the surety company. The claim was advanced by defendant in error that the engineer did not act in good faith, but was induced to report to the board that the work was being unnecessarily delayed by defendant in error, in order, in collusion with the representative of the surety company, to substitute for the defendant in error in the completion of the work another and favored contractor. The objection was based upon the ground that the pleadings disclosed no such issue. The pleadings are not required to set out evidence. The question as to the good faith of the engineer was presented in the pleadings. Any evidence tending to show good faith or lack of good faith was admissible, though not specially pleaded.

[8, 9] The sixteenth assignment is based on the sustaining by the court below of an objection interposed by defendant in error to questions asked the witness Pistole by plaintiff in error, intended to elicit from him that the county had not retained a fund of $25,000 from the road fund, to answer any judgment that might be recovered against it in this suit. The defendant in error was permitted to prove, without objection, that an admission was made by one of the attorneys for the county to that effect. To rebut that evidence the plaintiff in error offered to make the proof objected to. We think the plaintiff in error was entitled to rebut the alleged admission, either by evidence tending to show it was not made, or by evidence tending to show that it was in fact untrue, which would include proof, such as that offered, that no such fund was in fact retained. However, the record affirmatively shows that the same witness had already, and without objection, testified that no such fund had been retained, and that the road fund did

not amount to that sum. It cannot be said that the plaintiff in error suffered any injury because the witness was not permitted to reiterate the statement.

[10] But one question is presented by assignments numbered 22, 25, 26, 28, and 32. The witnesses Moore, Kinard, and Lockhart were permitted on cross-examination, and against the objection of plaintiff in error, to testify to previous transactions between the county, through its road engineer and road commissioners, and the Healy Construction Company, which was substituted for defendant in error in the completion of the contract, tending to prove that favoritism had been shown that company, on the recommendation of the engineer, by the road commissioners under former contracts. In view of the suggestion of collusion between the engineer, the representative of the surety company, and the Healy Construction Company, because of which it was claimed that the defendant in error was wrongfully eliminated from the contract and the Healy Construction Company substituted for him, we think it was within the discretion of the court to permit such cross-examination.

[11] The forty-second assignment of error is based upon the refusal of the court to permit the witness Brodnax to explain the circumstances attending the payment to the Healy Construction Company on former contracts of the retained percentage in advance of the time when it was legally payable. This was offered in rebuttal of evidence introduced by plaintiff in error, upon cross-examinations of the road officials, that such advance payments had been made; the purpose being to show previous instances of favoritism by them to the Healy Construction Company under former contracts. The court below ruled the evidence out because of the nonproduction of the former contracts. The plaintiff in error made no specific statement as to what was expected to be proved by the witness, other than that the road engineer, Moore, had had nothing to do with the premature payment to the Healy Construction Company of the retained percentage. The witness was permitted to, and did, answer a subsequent question to the effect that Moore, the road engineer, had had nothing to do with procuring the reserved percentages to be paid in advance of the legal time of payment. We think that this answer covered all the plaintiff in error was entitled to, in view of the fact that there was no other information given the court as to what was proposed to be proved by the witness.

[12] The fifty-sixth assignment of error is based on the overruling of the plaintiff in error's motion to exclude the testimony at its conclusion. The ground of the motion relied upon was that there had been a fraudulent alteration of the contract sued on, after its execution, and by the defendant in error, which avoided it, or that there had been no meeting of minds upon the contract as finally reduced to writing. The plaintiff in error makes no insistence here that the evidence supports the contention that there was a fraudulent alteration of the contract. It is insisted that the minds of the parties to it failed to meet as to the price of one item, which the written contract stated to be 19¾ cents a yard, while the plaintiff in error's contention is that

the understood price was 19¼ cents a yard. The evidence shows that
at the meeting of the road commissioners at which the defendant in
error's bid was accepted the clerk read the bid ·in the presence of de-
fendant in error at 19¼ cents for this item and that defendant in er-
ror said nothing. However, the evidence is convincing that subse-
quent estimates were made and paid to the defendant in error on the
basis of 19¾ cents, and that after the contract was taken over by the
surety payments were made to it on the same basis. This practical
construction given the contract by the parties made it a question for
the jury to determine as to whether there was the necessary meeting
of minds when the contract was executed.

[13] The fifty-seventh, fifty-eighth, and fifty-ninth assignments of
error all present the question as to whether the court, in the instruc-
tions given and refused, gave proper effect to the opinion of the road
engineer that the work was being unnecessarily delayed, expressed to
the commissioners, when they ordered defendant in error to discon-
tinue work under the contract. The plaintiff in error excepted to a
portion of the oral charge of the court, and requested verbally a modi-
fication of it, which was refused, and also requested a number of
written instructions, none of which were given. These are the bases
of the three assignments. The clause of the contract in point is as
follows:

> "*Progress of Work and Forfeiture of Contract.*—The good roads commission
> reserves *the right to declare the contract forfeited*, if at any time it should
> appear to the engineer that the work or any part thereof is being unnecessarily
> delayed or that the contractor is willfully violating any of the conditions of
> the contract, or is executing the same in bad faith. Under such conditions the
> contractor will be notified in writing to discontinue the work, and all money
> due him, as well as his bond, will be held to protect the county from any
> loss in the completion of the work."

This is the only provision of the contract which gives a special effect
to the opinion of the engineer on this subject-matter. It confers on
the good roads commission the *right to forfeit the contract*, upon re-
port to them by the engineer that it appears to him, either (a) that the
work or part of it is being unnecessarily delayed, or (b) that the con-
tract is being willfully violated or is being executed in bad faith. In
all other cases the rights and remedies of the county for a breach or
contemplated breach of the contract by the contractor are unchanged
from the common law. The plaintiff in error, in order to avail of the
special effect given the engineer's opinion by the contract, must bring
itself clearly within the terms of the provision and act strictly in ac-
cord with the remedy there provided. It is conceded that to give the
engineer's opinion conclusive effect, even in the absence of fraud or
bad faith on his part, the contract must provide either in express terms
or by necessary implication (if that is sufficient) that it shall be final or
conclusive. It has no such weight, in the absence of such an express
or necessarily implied provision in the contract, and the remedy, then
given, must be strictly pursued. By the terms of the provision of the
contract relied upon by plaintiff in error, the report of the engineer as
to what appeared to him only gave the good roads commission "the
right to declare the contract forfeited." If they did not declare the

contract forfeited, then the opinion of the engineer would not protect them in any other action taken by them, unless his opinion was justified by the facts.

The inquiry then presents itself as to whether the good roads commission did forfeit or declare forfeited the defendant in error's contract with it. This is to be determined by what took place in their meeting of December 27, 1913, and by the resolution spread upon their minutes, and a copy of which was sent to defendant in error. The resolution was in these words:

"Therefore, be it resolved by said good roads commission in pursuance of the terms of said contract and the specifications, which are made a part thereof, that notice be given forthwith to the said contractor and the United States Fidelity & Guaranty Company, surety on the contractor's bond, that said contractor discontinue work, and that unless said surety shall forthwith take charge of said work, and undertake the performance of said contract, and so advise this commission, then the said good roads commission will forthwith forfeit the said contract, and will contract with other parties for the performance of the said contract, and will hold the said contractor and the said surety for any loss or damage incurred by their failure to perform said contract. Be it further resolved, that a copy of this resolution be delivered forthwith to said contractor and said surety."

This resolution was afterwards approved by the county board of supervisors. A copy of it was sent defendant in error and his surety. Thereupon his corporate surety undertook to complete the contract, and did in fact do so, the defendant in error protesting. Does this constitute a forfeiture of the contract? The defendant in error was required, when he entered into the original contract, to execute a bond with surety for its faithful performance. The bond contained this provision:

"Provided, however, that the surety shall, at its option, have the right, upon default of said contractor, to complete the work, and shall be entitled to such benefits and emoluments as may then be due the contractor."

The contract, as between the county and defendant in error, gave the former the immediate right to forfeit it, when it appeared to the engineer that the work was being unnecessarily delayed. The bond, however, provided that the surety should have an option to take over the contract and complete the work, when the contractor was in default. If the county had exercised its right to forfeit the contract, without giving the surety the option to complete the work under it, the surety would have been released. It was not the purpose of the county to release the surety, and it was not its purpose to forfeit the contract, since to do so would have had that effect. Its purpose was, as expressed in the language of the resolution, to declare the contractor in default and notify the surety to exercise its option to take over and complete the contract, and only to forfeit the contract in the event and after the surety had declined to exercise the option.

A forfeiture would have the effect to terminate the contract, and leave the parties only with a right to sue for its breach. To call upon the surety to complete the contract on behalf of its principal and for its own protection, while the effect might be equally disastrous to the

principal as a forfeiture would have been, clearly is not a forfeiture, since the contract, in that event, would not be terminated, but its provisions would still be fully carried out and the work completed under and by its terms by the surety, which was one of the parties to it, and which by the terms of the bond, which was a part of it, was given that right, in the event of a default by the contractor. The original contract, instead of being ended, and the work relet and finished under a different and subsequent contract, would, in that event, be carried on till it was fully performed, and the rights of the parties would then be determined upon the basis of a fully performed, and not upon that of a forfeited and broken, contract.

The resolution did not declare a forfeiture, but only threatened to do so, in the event the surety did not exercise its option to complete the contract. The surety did exercise that option, and the occasion for the declaration of the forfeiture did not arise.

A forfeiture never having been declared by the road commissioners or county supervisors, the provision relied upon by the plaintiff in error, giving final and conclusive effect to the opinion of the engineer, to the effect that the work was unnecessarily delayed, had no appropriate place in the decision of the cause. If the road commissioners had forfeited the contract, without calling in the surety to complete it, or if the surety, having been called upon, had declined to take it over, and the road commissioners had then declared it forfeited, and relet the work to other parties, their action, under the provisions relied upon, would have been justified, if it had appeared to the engineer that the work was unnecessarily delayed, though in fact it was not so, provided the engineer acted without fraud and without bad faith. But this was not what the road commissioners in fact did. On the contrary, they purposely refrained from declaring the contract forfeited, but accomplished its performance by notifying the surety to perform and by its agreeing to perform and in fact fully performing the contract of its principal. The contract did not provide that the opinion of the engineer, even when entertained in good faith, was to be final and conclusive, and a protection to the county in ordering the defendant in error to discontinue work, unless the county also elected to forfeit the contract. The language of the contract, in terms, restricts the application of this clause to the case of a declaration of a forfeiture, and it is not within the power of the court to enlarge or extend its application to a case not provided for by the parties.

The engineer's opinion is final, only when made so by the express or necessarily implied agreement of the parties, deduced from the language of their contract. As in this case the evidence without dispute shows the contract was never forfeited, and as the engineer's opinion was made final only in case of a declaration of forfeiture, we conclude that the only issue presented to the jury was whether the work had been in fact so unnecessarily delayed by the contractor at the time he was notified to discontinue work, as that it could not reasonably have been completed within the stipulated 500 working days.

[14] It follows that the plaintiff in error cannot complain of the instruction excepted to by it, since it was entitled to none on that subject-matter, in view of the only real issue involved, and the instruction given was therefore more favorable to it than it had the right to expect. For the same reason the plaintiff in error was not entitled to the instructions requested by it.

[15] The court instructed the jury that the burden was on the defendant in error to establish by a preponderance of the evidence all of the facts necessary to sustain its insistence, and that if the plaintiff was not in good faith prosecuting the work required of him by the terms of his contract, or was so environed that it could not in reason be expected that he would complete the work within the time specified in it, their verdict should be for the plaintiff in error. The court also instructed the jury that if they found from the evidence that the defendant in error began work under the contract, and was prosecuting the same with such diligence that he could reasonably have completed the work within the 500 working days allowed by it, their verdict should be for the defendant in error. We think these instructions fairly presented to the jury the issue which was determinative of the merits.

We find no error in the record that was prejudicial to the plaintiff in error and would justify a reversal of the case, and the judgment is affirmed.