## GANTZ v. UNITED STATES.
No. 12086.

Circuit Court of Appeals, Eighth Circuit.
April 28, 1942.

Rehearing Denied June 11, 1942.

George C. Dyer, of St. Louis, Mo., for appellant.

David M. Robinson, Asst. U. S. Atty., and Harry C. Blanton, U. S. Atty., both of St. Louis, Mo. (Russell Vandivort, Asst. U. S. Atty., of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

This appeal is from a judgment entered upon the verdict of a jury finding the appellant (hereinafter referred to as defend-ant) guilty under five counts of an indictment.[1] Two of these counts (Fifth and Sixth) charged violations of § 17(a) (1) of the Securities Act of 1933, c. 38, Title I, 48 Stat. 84, 15 U.S.C.A. § 77q(a) (1),[2] and the other three (Eighth, Ninth and Tenth) charged violations of the Mail Fraud Statute, c. 321, § 215, 35 Stat. 1130, 18 U.S.C.A. § 338.[3] The District Court sentenced the defendant to four years' imprisonment upon each of the five counts, the sentences to run concurrently.

The errors assigned by the defendant relate (1) to the refusal of the court to direct a verdict of acquittal, (2) to rulings upon evidence and other rulings, (3) to alleged misconduct of counsel for the Government in argument, and (4) to the charge of the court.

The indictment was in conventional form. It charged the defendant with having devised a scheme to defraud certain persons and with having used the mails in execution of it. The scheme was described in the First count and was set up by reference in each of the other counts. Each count charged specifically the sending of some communication through the mails in execution of the scheme.

The indictment is not under attack and the defendant does not argue that the evidence of the Government was insufficient to establish that the defendant devised the scheme described in the indictment. It is therefore unnecessary to state in detail, in that regard, the charges contained in the indictment or the facts shown by the evidence of the Government. In substance and effect, the charges were, and the evidence of the Government tended to prove, that the defendant, in violation of the statutes referred to, as the president and manager of G. A. Gantz & Company, a corporation, a dealer in securities at St. Louis, Missouri, conducted a dishonest, fraudulent and insolvent brokerage business

---

[1] The indictment contained ten counts. The court directed a verdict of acquittal as to two counts, and the jury found the defendant not guilty on three other counts.

[2] "(a) It shall be unlawful for any person in the sale of any securities * * * by the use of the mails, directly or indirectly—(1) to employ any device, scheme, or artifice to defraud."

[3] "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * shall, for the purpose of executing such scheme or artifice or attempting so to do, place, or cause to be placed, any letter, postal card, package, writing, circular, pamphlet, or advertisement, * * * in any post office, or station thereof, or street or other letter box of the United States, or authorized depository for mail matter, to be sent or delivered by the post office establishment of the United States, * * * shall be fined not more than $1,000, or imprisoned not more than five years, or both."

in the purchase and sale of securities, cheated the customers of the corporation in their dealings with it, and financed the operation of the business by the unauthorized and fraudulent use of the moneys and securities of the customers until bankruptcy finally intervened.

■ 1. The defendant's first contention is that he was entitled to a directed verdict of acquittal because there was no substantial evidence that he placed or caused to be placed in the United States mail any of the writings referred to in any of the counts of the indictment upon which he was convicted. There was no direct evidence that the defendant himself placed in the mails any of the communications referred to or that he gave any specific directions to anyone to place them in the mails. The evidence of mailing, as it frequently is in such cases, was circumstantial. It will only be necessary to consider the sufficiency of the evidence of mailing with respect to one of the counts, since the evidence as to each was in that regard substantially the same, and if the defendant was properly convicted upon any count the judgment will have to be affirmed.[4]

The Eighth count of the indictment, upon which count defendant was found guilty, charges that on June 1, 1939, at the city of St. Louis, Missouri, he placed and caused to be placed in the Post Office of the United States, to be sent and delivered by it, a statement addressed to Charles R. Dufner, Hermann, Missouri. The statement is a statement of account dated June 1, 1939. Printed across the top is, "In Account with G. A. Gantz & Company, Arcade Building, Saint Louis, Mo.", followed by the printed word "To." After the "To" appears in typewriting, "Mr. Charles R. Dufner, Hermann, Missouri," and below a ruled line appears a statement in typewriting showing that he had a debit balance of $634.93, and was "Long—10 shares General Motors Corporation" and "12 shares Chrysler Corporation." Charles R. Dufner, who was a witness for the Government, testified that he was a farmer residing at Hermann, Missouri; that he had had business transactions with G. A. Gantz & Company which had been carried on through correspondence; that the company had bought stocks upon his instructions, and "that all business transacted with G. A. Gantz & Company was done through the mail." Dufner identified the statement referred to in the Eighth count of the indictment as the last monthly statement he had received from the company, and testified that he received it through the mails. He also testified to having received similar monthly statements through the mails.

Margaret Kottkamp, a witness for the Government, testified that she was employed as a stenographer for G. A. Gantz & Company from July, 1938, until the discontinuance of the business in 1939; that a Miss Storment was bookkeeper; that the defendant was in charge of the office and that the witness received her instructions from him; that on or about June 1, 1939, she made out monthly statements, which were put in envelopes and stamped, but that she did not know whether they were mailed or not; that she might deposit part of the mail and Miss Storment part. She also testified that it was customary for the statements to be typed, put in envelopes and sealed ready for mailing, and that either she or Miss Storment mailed them; that it was a general policy of G. A. Gantz & Company to type and mail monthly statements. On cross-examination she testified that she did not of her own personal knowledge know whether statements were mailed June 1, 1939, or not; that she did mail some letters, but could not say which ones she mailed; that it was customary for some confirmations (of purchases of securities ordered) and statements of account to be delivered personally, and she did not know which were delivered personally and which were mailed. On redirect examination, she testified that statements would be handed to customers who came into the office while the statements were being made out, and that it was the office policy with reference to confirmations and monthly

---

[4] The rule is that when a defendant is convicted upon several counts of an indictment, the judgment will be sustained if he was properly convicted under any count which is good and is sufficient in itself to support the judgment. Claassen v. United States, 142 U.S. 140, 146, 12 S.Ct. 169, 35 L.Ed. 966; Evans v. United States, 153 U.S. 584, 595, 14 S.Ct. 934, 38 L.Ed. 830; Abrams v. United States, 250 U.S. 616, 619, 40 S.Ct. 17, 63 L.Ed. 1173; Brooks v. United States, 267 U.S. 432, 441, 45 S.Ct. 345, 69 L.Ed. 699, 37 A.L.R. 1407; Whitfield v. Ohio, 297 U.S. 431, 438, 56 S.Ct. 532, 80 L. Ed. 778; Roberts v. United States, 8 Cir., 96 F.2d 39, 40; Neal v. United States, 8 Cir., 102 F.2d 643, 644, 645.

statements for them to be prepared and mailed.

Thomas J. Hagan, a witness for the Goverment, testified that he was a salesman for G. A. Gantz & Company; that the defendant operated the business; that Miss Storment had charge of the books and Miss Kottkamp was general stenographer; that it was the general policy of G. A. Gantz & Company to notify customers of the purchase and sale of stocks and to send them monthly statements; that confirmations were sent through the mail, but that in a few instances they would be delivered by a salesman.

There is abundant evidence in the record that the defendant used the mails in the conduct of the business. The defendant himself testified that sometimes the mails were used and sometimes not; that at times an effort was made to avoid using the mail when a messenger could deliver the letters cheaper than they could be sent by mail. The jury could reasonably believe from the evidence that the defendant ran the business; that the business was such that the mails were customarily and extensively used in carrying on the business; that confirmations of orders and monthly statements were ordinarily mailed to customers who did not call for them personally; and that the monthly statement which was dated June 1, 1939, and received by Charles R. Dufner at Hermann, Missouri, through the mails, was mailed or caused to be mailed by the defendant in the ordinary course of his business and in accordance with his usual practice. In fact, if the jury believed the evidence introduced by the Government, it is difficult to understand what other conclusion could reasonably be reached.[5]

■ It is our opinion that there was ample proof of the mailing of the communications referred to in the five counts upon which the defendant was convicted.

■ 2. The defendant's next contention is that the evidence of the Government's expert accountant King, who summarized and analyzed the books and records of G. A. Gantz & Company, was improperly admitted because not shown to be based exclusively on those books and records or other records in evidence. This contention appears to be based largely on a statement made by King, on cross-examination, to the effect "that his answers concerning individual accounts and items were based on the books and records of G. A. Gantz & Company that were presented in evidence in the case in the court room and on the records of brokerage houses that had been produced in the court room, and that he had taken into account something besides the books and records of G. A. Gantz & Company." Counsel for the defendant then moved to strike all the testimony of the witness. The court overruled the motion, saying: "I assume, of course, that he has in mind the records that have been offered in evidence in the case." The statement of the witness that he had taken into account something besides the records of G. A. Gantz & Company was not a statement that he had taken into consideration anything not in evidence. On the same page on which the statement just referred to appears, the record shows that the witness testified "that to the best of his knowledge all the books and records he had examined from which his work papers had been prepared and upon which his testimony had been based were in the court room." The effort of defendant's counsel to show by the witness that his testimony was based upon matters or records not in evidence was unsuccessful. There is no merit in the contention that the testimony of this expert accountant should not have been received.

■ 3. The defendant asserts that the court erred in failing to sustain an objection to the following question asked of Susan Lewis, a witness for the Government, who had been a customer of G. A. Gantz & Company and had bought securities on margin: "Do you know what the equity was in your account at the time G. A. Gantz & Company went into receivership?" The objection was that the record was the best evidence. The question called for a yes or no answer, and there was no error in overruling the objection. It was a trivial matter, as is indicated by the fact that, although the answer was not responsive and stated a conclusion, no motion to strike was made. Similar questions

5 See and compare, Cochran v. United States, 8 Cir., 41 F.2d 193, 205; Corbett v. United States, 8 Cir., 89 F.2d 124, 127; McIntyre v. United States, 6 Cir., 49 F.2d 769; Havener v. United States, 10 Cir., 49 F.2d 196, 200; Levinson v. United States, 6 Cir., 5 F.2d 567, 569; Greenbaum v. United States, 9 Cir., 80 F.2d 113, 124, 125; Shreve v. United States, 9 Cir., 103 F.2d 796, 813.

asked other customer witnesses were not even objected to.

4. The defendant asserts that his counsel was denied permission to ask a leading question on cross-examination of the Government's expert accountant. What occurred was this: The witness had testified that as of June 27, 1935, a statement made by G. A. Gantz & Company that it did not carry margin accounts for customers was correct, but that the statement ceased to be correct thereafter. Counsel for defendant asked the following question: "Now, the fact is that they did not have the capital to carry a single margin account, they carried it all with brokers and banks, did they not?" Counsel for the Government made the following objection: "I object to Mr. Armstrong [one of defendant's counsel] testifying here about the facts, that they did not have the capital, and so on." The objection, we think, should have been overruled, but the court sustained it and suggested that counsel put the question "in a proper form" and ask the witness "a straight question, did they carry margin accounts." Counsel for the defendant then put his question in another form, which was fully as leading as the question first quoted and which called for substantially the same information, namely, whether the method employed by G. A. Gantz & Company of handling the margin accounts of customers was carrying margin accounts for customers. That question was answered, and therefore no prejudice resulted from the ruling complained of.

5. The defendant, on direct examination, was asked why he had made a certain settlement with the administrator of the estate of Albert H. Hitchings, as the result of which G. A. Gantz & Company gave a note for $2,500, although its records showed that it had a claim against the estate for $28,000 on a stock subscription alleged to have been made by Hitchings. In answer to the question, the defendant said, "That settlement was made because Mr. Blase, [an attorney for G. A. Gantz & Company] who arranged the settlement, told us—" At that point, counsel for the Government objected to the witness stating what Mr. Blase had said. The court sustained the objection. The defendant asserts that it was competent for him to show that he acted upon the advice of counsel, and that such testimony bore upon the question of his good faith in making the settlement. There was no offer of proof, and this court can only speculate as to what the defendant would have said that Blase "told us."[6] Later on, the defendant succeeded in giving his explanation of the settlement. His counsel asked him the following question: "Assuming that the Hitchings Estate was insolvent and that a Judgment against the estate would have been worthless, or practically so, did that have anything to do with your agreement or your entering into an agreement to pay the estate of Hitchings twenty-five hundred dollars on their counterclaim against your company?" The answer was: "My instructions to my counsel was. 'Let them sue.' That we had a counterclaim, and if we couldn't collect, I would be darned if they were. That was my instructions. That was my personal view of it." The defendant was then asked: "But at that time your company could not stand any suit on a counterclaim or any other kind of a suit, could it?" He answered: "Well, that was counsel's contention. It was not mine. And he said that we could not stand a suit." The defendant, upon being advised by his counsel that he could not state what had been told him, said: "Well, all right. At least, it was not my settlement." Assuming that the defendant should have been permitted to testify that he acted on the advice of counsel and what that advice consisted of, we think that no proper foundation was laid for the testimony excluded, and that, even if it was error to exclude it, the error was without prejudice. See Lauderdale County v. Kittel, 5 Cir., 229 F. 593, 602, 603.

6. It is also contended that the court erred in not permitting the defend-

[6] The general rule is that a ruling rejecting testimony is not reviewable in the absence of an offer of proof. Origet v. Hedden, 155 U.S. 228, 235, 15 S.Ct. 92, 39 L.Ed. 130; Herencia v. Guzman, 219 U.S. 44, 46, 31 S.Ct. 135, 55 L.Ed. 81; Federal Surety Co. v. Standard Oil Co., 8 Cir., 32 F.2d 119, 120, 121; Federal Intermediate Credit Bank v. L'Herisson, 8 Cir., 33 F.2d 841, 843; Hatch v. United States, 8 Cir., 34 F.2d 436, 438; Williams v. Commissioner, 8 Cir., 44 F.2d 467, 470; Cropper v. Titanium Pigment Co., Inc., 8 Cir., 47 F.2d 1038, 1042, 78 A.L.R. 737, 744; Clauson v. United States, 8 Cir., 60 F.2d 694, 695; Thompson v. United States, 8 Cir., 65 F.2d 897, 899; McVeigh v. McGurren, 7 Cir., 117 F.2d 672, 679.

ant to testify to a conversation which he stated he had had with Albert H. Hitchings, deceased, relative to the payment of the balance of his subscription to stock of G. A. Gantz & Company. We agree with the court that the defendant's testimony as to what Hitchings said to him would have been pure hearsay of the most objectionable kind. Furthermore, there was no offer of proof and no showing that the defendant's asserted conversation with Hitchings had the slightest bearing upon any issue in the case.

7. The defendant challenges the ruling of the court in sustaining an objection of the Government to the following question asked the defendant: "At that time, the Hitchings Estate was insolvent, was it not?" The objection was that "the testimony is directly to the opposite here. Mr. Hinton [M. A. Hinton, an officer of the corporate administrator of the estate] said the estate was solvent." The objection was bad, but no proper foundation had been laid for the question, since it had not been shown that the defendant had any personal knowledge of what the assets or liabilities of the Hitchings estate were, and we think the court did not err in excluding the testimony called for. Compare, Patrick v. Graham, 132 U.S. 627, 631, 10 S.Ct. 194, 33 L.Ed. 460. There was no offer of proof, and we would not, in any event, be justified in ordering a new trial because the defendant was not permitted to express his opinion as to the insolvency of the Hitchings estate, which opinion, as already pointed out, he virtually succeeded in getting into the evidence anyway.

8. The defendant asserts that Government counsel was permitted to ask leading questions of Government witnesses, to the prejudice of the defendant. We find no merit in this contention, and it is overruled on the authority of London Guarantee & Accident Co. v. Woelfle, 8 Cir., 83 F.2d 325, 334, in which we said: "Where the trial court has permitted a party thus to cross-examine his own witness, there should be no reversal on that account unless it can be made to appear that justice was obstructed, and not furthered, thereby and that substantial prejudice resulted."

9. The defendant asserts that the books and records of G. A. Gantz & Company were not sufficiently identified, but makes no argument on this point, and we regard it as without merit.

10. It is argued that the evidence was insufficient to warrant the conviction of the defendant under the two counts charging a violation of the Securities Act. No discussion of this point is required, since the defendant was convicted on three counts charging violations of the Mail Fraud Statute, conviction under any one of which counts will sustain the judgment.

11. It is asserted that the court erred in suppressing certain subpoenas duces tecum. We do not find in the record any such subpoenas or any order suppressing them, and we are therefore unable to consider the point. However, the defendant is mistaken in his contention that the Government was required to follow the law of Missouri with respect to endorsing on the indictment the names of all material witnesses. Knight v. Hudspeth, 10 Cir., 112 F.2d 137, 139; Moore v. Aderhold, 10 Cir., 108 F.2d 729, 732.

12. The contention that Government counsel was guilty of misconduct in his closing argument cannot be considered. In London Guarantee & Accident Co. v. Woelfle, 8 Cir., 83 F.2d 325, 344, we pointed out that one of the requisites to a review of remarks of counsel in argument was a bill of exceptions containing all of the closing arguments. See, also, Chicago, & N. W. R. Co. v. Kelly, 8 Cir., 84 F.2d 569, 573. The record in this case does not contain the closing arguments.

13. The defendant challenges the instructions of the court. Rule 36(1) of this Court requires that the bill of exceptions shall contain "the complete charge to the jury." The record in this case does not contain the charge to the jury. The record shows that the court denied two of the defendant's requests for instructions, on the ground that they were covered by the charge. In the absence of the charge in the bill of exceptions, we must presume that the requests were covered. The defendant complains because the court, at the close of the instructions, told the jury: "You need not consider the question of what punishment the defendant will or ought to receive in the event you return a verdict of guilty, but you discharge your full duty when you return that verdict, and in the event that you should find the defendant guilty upon some one or more of the counts, it is incumbent upon the Court to determine and fix the amount of punishment." The defendant segregates the

words, "you discharge your full duty when you return that verdict," and says that they amounted to a direction to find him guilty. This is obviously unwarranted. The Government, as an appendix to its brief, has printed what purports to be the complete charge of the court. We have carefully examined it in the light of the defendant's criticism. The charge is clear, concise, accurate, complete, and impartial.

The record shows that the defendant received a fair trial, that there were no prejudicial errors committed by the court, and that the verdict and judgment are sustained by substantial evidence.

The judgment is affirmed.