## BOWEN v. UNITED STATES.
### No. 13066.

Circuit Court of Appeals, Eighth Circuit.

Feb. 21, 1946.

Writ of Certiorari Denied April 29, 1946.

See 66 S.Ct. 980.

Charles F. Lamkin, Jr., of Kansas City, Mo. (Warrick, Koontz & Hazard, of Kansas City, Mo., on the brief), for appellant.

Robert T. Wright, Sp. Asst. to U. S. Atty. of Chicago, Ill. (Sam M. Wear, U. S. Atty., and David A. Thompson, Asst. U. S. Atty., both of Kansas City, Mo., and Theodore L. Thau, Sp. Asst. to Sol., Securities

and Exchange Commission, of Washington, D. C., on the brief), for appellee.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

The indictment in this case charged Leslie G. Bowen, Ray H. Andrews, and Peter A. Marxen with having devised a scheme to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations and promises in connection with the sale of "pre-organization certificates" of Bowen Industries, an unincorporated association, and of stock and promissory notes of Bowen Industries, Inc., the successor of Bowen Industries. The indictment contained thirteen counts, each covering an instance in which the mails were used. The first six counts were based upon § 17(a) of the Securities Act of 1933, 15 U.S.C.A. § 77q(a).[1] The seventh and eighth counts were based on § 5(a) of the same Act, 15 U.S.C.A. § 77e (a).[2] The remaining counts of the indictment were based upon the Mail Fraud Statute, 18 U.S.C.A. § 338.[3]

The defendants entered pleas of not guilty and were tried. The jury convicted Bowen on all counts of the indictment, and acquitted his co-defendants. The court sentenced Bowen to three years imprisonment under each count, the sentences to be served concurrently.

Bowen asserts that his conviction should be set aside upon the following grounds:

1. That the trial court erroneously received in evidence summaries, prepared by a government witness, which (a) contained misleading, inflammatory and prejudicial statements not based on evidence, and (b) were based in part upon a statement made by the defendant Andrews after he had withdrawn from the scheme.

2. That the court erroneously instructed the jury (a) that "the charge in the first six counts of the indictment was made out by failure to state a material fact, the absence of which would make a fact stated misleading," and (b) "that a scheme to defraud was proved if a defendant intentionally made a single false statement." [The quotations are from appellant's brief.]

3. That the court erred in giving a supplemental charge to the jury after they had deliberated for ten hours and the foreman had advised the court that they were deadlocked eleven to one.

Since the validity of the indictment and the sufficiency of the evidence are not challenged by this appeal, it is unnecessary to state in detail the charges contained in the indictment or the facts which the government's evidence tended to prove. If Bowen was properly convicted upon any count of the indictment, the judgment appealed from must be affirmed, because the

[1] "(a) It shall be unlawful for any person in the sale of any securities * * * by the use of the mails, directly or indirectly—

"(1) to employ any device, scheme, or artifice to defraud, or

"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

[2] "(a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

"(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell or offer to buy such security

through the use or medium of any prospectus or otherwise; or

"(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale."

[3] "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * shall, for the purpose of executing such scheme or artifice or attempting so to do, place, or cause to be placed, any letter, postal card, package, writing, circular, pamphlet, or advertisement, * * * in any post office or station thereof, or street or other letter box of the United States, or authorized depository for mail matter, to be sent or delivered by the post office establishment of the United States, * * * shall be fined not more than $1,000, or imprisoned not more than five years, or both."

sentence upon all the counts is less than the maximum sentence which might have been imposed under any one count.[4]

As is usual in such cases as this, the indictment describes the alleged scheme to defraud in the first count. The scheme is then incorporated in the other counts by reference. The government asserts that in the seventh and eighth counts, which charged violations of § 5(a) (2) of the Securities Act, the allegations relating to the scheme were surplusage, and that the evidence conclusively showed that securities had been willfully issued by Bowen and sent through the mails without his having on file with the Securities and Exchange Commission the registration statement required by the Act. It is therefore contended that Bowen was properly convicted upon those counts, even if errors were committed by the trial court in the receipt of evidence and in the court's instructions to the jury affecting other counts in which the scheme was an essential ingredient. We find it unnecessary to decide this question.

For the purposes of this opinion, the facts which the evidence of the government tended to prove may be stated briefly as follows: Bowen, an inventor, in or about 1932 succeeded in interesting certain investors in financing a plan to manufacture and sell devices which he had originated or was about to originate. He then had a small shop at Independence, Missouri. The devices which he proposed to make and sell included, among others, a motorless washing machine, a two-speed sprocket for a bicycle, a speed reducer, a pedal boat, and a refrigerator. Bowen subsequently opened a shop in Chicago for the purpose of making some of these devices. His project started out as an unincorporated association called Bowen Industries. It was incorporated in April, 1942, as Bowen Industries, Inc. It was financed before incorporation by the sale of "pre-organization certificates," to be later exchanged for stock. The certificates, which were also called "units", were sold for $100 each. Meetings of the investors were for a time held in a restaurant operated by the defendant Andrews in Kansas City, Kansas. Andrews assisted Bowen in the sale of the certificates, and, after the incorporation of the association, became secretary of the company. He remained its secretary until February 11, 1943, when he was ousted and was succeeded by Marxen. Stock of Bowen Industries, Inc., was issued in exchange for the "pre-organization certificates" of Bowen Industries. Thereafter the company was financed by issuing notes to various stockholders. According to the company's records, $193,720 was obtained from the sale of "pre-organization certificates," and $45,168.46 from the issuance of promissory notes. Bowen was the organizer of the project and at all times controlled its activities. He became president of the company and a majority stockholder. Misrepresentations were made by Bowen in connection with the sale of the securities, and the mails were used. The project was a failure.

The main issue upon the trial, as is usual in such cases, was whether Bowen's project was conceived and was executed by him and his co-defendants in good faith and without intent to defraud purchasers of the securities, or whether it was a scheme to defraud and to obtain money by false and fraudulent representations and promises.

It is necessary first to consider whether the summaries to which Bowen refers were improperly admitted in evidence and were prejudicial.

The summaries were based upon such files, records and accounts relating to receipts and disbursements as the accountant and investigator for the Securities and Exchange Commission, who prepared the summaries, was able to locate. The summaries were intended to indicate the moneys which the records showed were received from investors, and the purposes for which the moneys were disbursed. The accountant's testimony was that the records were incom-

---

[4] Claassen v. United States, 142 U.S. 140, 146, 147, 12 S.Ct. 169, 35 L.Ed. 966; Evans v. United States, 153 U.S. 584, 595, 14 S.Ct. 934, 38 L.Ed. 830; Evans v. United States, 153 U.S. 608, 14 S.Ct. 939, 38 L.Ed. 839; Abrams v. United States, 250 U.S. 616, 619, 40 S.Ct. 17, 63 L.Ed. 1173; Pierce v. United States, 252 U.S. 239, 252, 253, 40 S.Ct. 205, 64 L.Ed. 542; Brooks v. United States, 267 U.S. 432, 441, 45 S.Ct. 345, 69 L.Ed. 699, 37 A.L.R. 1407; United States v. Trenton Potteries Co., 273 U.S. 392, 401, 402, 47 S.Ct. 377, 71 L.Ed. 700, 50 A.L.R. 989; Whitfield v. Ohio, 297 U.S. 431, 438, 56 S.Ct. 532, 80 L.Ed. 778; Gantz v. United States, 8 Cir., 127 F.2d 498, 501.

750

plete and inadequate, and that, prior to the incorporation of Bowen Industries, most of the moneys received from investors were deposited in the personal bank accounts of Bowen and Andrews.

Exhibit 274, which was substituted for Exhibit 269, may be taken as typical of the summaries which were received in evidence.[5]

■ Bowen asserts that the statements in the summaries "withdrawals for which there is some explanation," and "withdrawals for which there is no explanation," were misleading and prejudicial. The accountant who prepared the summaries, both on direct and on cross-examination explained exactly what he meant by these statements, and that his testimony and the summaries related solely to explanations or lack of explanations in the books, records, files and accounts, and in a statement of Andrews, all of which were in evidence. The court instructed the jury that "the use of this language [the statements in the summaries] has no significance, other than that which the witness has assigned to it in his explanation, and with that customary instruction they [the summaries] may be admitted." It is not conceivable to us that the jury was, or could have been, misled by the statements in the summaries to which Bowen takes exception.

■ Exhibit 271, a summary of deposits and withdrawals by Andrews from his account in the First State Bank of Kansas City, Kansas, was based in part on Exhibit 273, a statement obtained from Andrews in May, 1944, more than a year after

---

[5] "(Plaintiff's Exhibit 274.)

"Bowen Industries, Inc.
"Summary of Cash Receipts and Disbursements for period from Jan. 1, 1934, to June 30, 1944.

"Receipts

| | |
|---|---|
| Cash received from investors for units of membership or stock ................................................ $193,720.00 | |
| Proceeds of sale of notes to investors, per books .......... 45,168.46 | |
| Total cash receipts from investors ..................................... | $238,888.46 |
| Proceeds from sale of used machinery, per books ...................... | 2,070.00 |
| Cash realized from work on war contracts, per books ................... | 170,951.94 |
| Cash received from Leslie G. Bowen, per books, (source unexplained) .... | 13,159.45 |
| Cash received from miscellaneous sources, per books ................... | 481.75 |
| | |
| Total cash receipts for period from January 1, 1934 to June 30, 1944.... | $425,551.60 |

"Disbursements

| Disbursements for which there is some explanation: | Per Withdrawals L. G. Bowen Bank Acct. : | Per Withdrawals Ray H. Andrews Bank Acct.: | Total | |
|---|---|---|---|---|
| For development and machinery | $12,934.68 | $ 5,663.34 | $18,598.02 | |
| Refund to investor | | 50.00 | 50.00 | |
| To or for L. G. Bowen | 9,909.33 | 14;188.60 | 24,097.93 | |
| To or for Ray H. Andrews | | 3,815.82 | 3,815.82 | |
| | $22,844.01 | $23,717.76 | $46,561.77 | 46,561.77 |
| Cash withdrawals from Bowen and Andrews Bank accounts for which there is no explanation: | 35,731.50 | 2,959.76 | 38,691.26 | 38,691.26 |
| Estimated and unsupported claim to personal funds included in Total Deposits in Andrews' bank account ................................... | | | | 6,250.00 |
| Cash disbursements April 1, 1942 to Feb. 28, 1943, per books ........... | | | | 68,961.52 |
| Cash disbursements March 1, 1943 to June 30, 1944, per books ......... | | | | 180,563.90 |
| | | | | |
| Total Cash Disbursements of which there is some record from January 1, 1934, to June 30, 1944 ......................................... | | | | $341,028.45 |
| Amount unaccounted for Jan. 1, 1934 to June 30, 1944 .................. | | | | $ 84,523.15" |

he had severed his connection with Bowen, and this statement is also reflected in Exhibit 274. Bowen asserts that Andrew's statement was a narrative of past events by an exparticipant in the alleged scheme, and was therefore hearsay as to Bowen. But the statement taken from Andrews in 1944 was admissible against him and was in no way hurtful to Bowen. Andrews concededly handled for Bowen some of the funds collected from investors and for which Bowen and Andrews were accountable. Exhibit 271 shows total deposits in Andrews' bank account of $33,327.03, and total withdrawals of $32,927.52. "Withdrawals for which there is some explanation" amount to $23,717.76, and include what is entitled "Estimated and unsupported claim [by Andrews] to personal funds included in above deposits," amounting to $6,250. The withdrawals from Andrews' account "for which there is no explanation" amount to $2,959.76. The figure of $6,250, "claim to personal funds," was based upon the statement (Exhibit 273) taken from Andrews, and reduced the unexplained withdrawals of Andrews by that amount. In Exhibit 274, the $6,250 was listed as a disbursement, and reduced the amount shown to be unaccounted for by Bowen Industries, Inc., and was therefore of benefit to Bowen.

■ There is no valid reason for being captious about these summaries. They tended to show that Bowen and his codefendants did not keep adequate books and records and that it was impossible to determine from such files and records as they kept whether the funds furnished by investors were properly or improperly expended. The jury was entitled to know who had received the funds contributed by the investors, to what extent the funds were accounted for, and what sort of records were kept by Bowen and his associates. One in a fiduciary position, like Bowen, cannot complain that summaries are incomplete, when their inadequacy is due to his neglect to keep proper account of funds entrusted to him by investors for specific purposes. Compare, Brady v. United States, 9 Cir., 26 F.2d 400, 402. The defendants, who were the persons who had to do with the investors' funds, were in court, took the stand, and had ample opportunity to attack or to explain the summaries. We are satisfied that no prejudicial error was committed in admitting them in evidence.

■ The assertion that the charge was erroneous as to the first six counts need not be discussed, since the conviction of Bowen under any one of the remaining counts will support the sentence.

■ The argument that the court erroneously charged the jury that a single false statement would prove a scheme to defraud is without merit. The charge, taken as a whole, was fair and accurate. Bowen attempts to segregate one portion which he thinks would, standing alone, be inaccurate. Since that portion of the instructions cannot be removed from its context, we need not consider its accuracy as an isolated statement. Compare, Gantz v. United States, 8 Cir., 127 F.2d 498, 504, 505.

The contention that the court, upon being advised by a note from the foreman of the jury that it was deadlocked eleven to one, erred in giving a supplemental instruction, urging the jurors to agree if they could conscientiously do so, presents an interesting question. The supplemental instruction was, in and of itself, unobjectionable.[6]

Bowen's argument rests upon the doctrine of Burton v. United States, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482, and Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345. In the Burton case, the Supreme Court disapproved the practice of inquiring of a jury, which was unable to agree, as to how it was divided numerically. The court said (pages 307, 308 of 196 U.S., page 250 of 25 S.Ct., 49 L Ed. 482):

"* * * Such a practice is not to be commended, because we cannot see how it may be material for the court to understand the proportion of division of opinion among the jury. All that the judge said in regard to the propriety and duty of the jury to fairly and honestly endeavor to

---

6 United States v. Allis, C.C.E.D.Ark., 73 F. 165, 182, 183, affirmed Allis v. United States, 155 U.S. 117, 120–122, 15 S. Ct. 36, 39 L.Ed. 91; Allen v. United States, 164 U.S. 492, 501, 502, 17 S.Ct. 154, 41 L.Ed. 528; Hewitt v. United States, 8 Cir., 110 F.2d 1, 10, certiorari denied 310 U.S. 641, 60 S.Ct. 1089, 84 L.Ed. 1409; Boehm v. United States, 8 Cir., 123 F.2d 791, 812, certiorari denied 315 U.S. 800, 62 S.Ct. 626, 86 L.Ed. 1200; Culp v. United States, 8 Cir., 131 F.2d 93, 101.

agree could have been said without asking for the fact as to the proportion of their division; and we do not think that the proper administration of the law requires such knowledge or permits such a question on the part of the presiding judge."

In the Brasfield case, the Supreme Court ruled that it is reversible error for a judge to inquire of a jury, unable to agree, the extent of its division numerically. This, upon the theory that the general tendency of such an inquiry is coercive and that "such a practice, which is never useful and is generally harmful, is not to be sanctioned." Page 450 of 272 U.S., page 136 of 47 S.Ct., 71 L.Ed. 345. All that the Supreme Court has thus far held is that it is improper for a trial judge to inquire of a jury, which has failed to agree, how they are divided numerically, and that if a judge makes the inquiry he commits reversible error. We are now asked to expand this rule and to hold that if the foreman of a jury, without any inquiry having been made by the trial judge, informs him that the jurors stand eleven to one, reversible error is committed and that the trial judge must declare a mistrial, or that, in any event, he must not give any supplemental instruction to the jury, urging an agreement.

We shall examine this contention in the light of the circumstances of the present case. There were three defendants, each charged with thirteen separate offenses. The purpose of the trial was to secure a determination of the guilt or innocence of each defendant as to each offense. The trial lasted about two weeks. The court concluded that the evidence would not support a conviction of Andrews under counts 2, 7, 8, 9 and 13, since the record showed that he had severed his connection with the scheme prior to the occurrences upon which those counts were based. With that exception, the issue of the guilt or innocence of each defendant under each count was submitted to the jury. That meant that the jury had thirty-four issues of fact to decide. The foreman of the jury, after the jurors had deliberated for ten hours, notified the court that the jury was deadlocked eleven to one. The court called in the jury, informed counsel—out of the hearing of the jury—that the jurors stated that they were hopelessly dead-locked, and then said to the jurors: "Gentlemen, I assume you have not reached a verdict. Is that correct?" The foreman's answer was, "That is correct, your Honor." The court then proceeded to give the conventional supplemental instruction. This occurred at ten o'clock in the evening, and the court, as a part of the supplemental charge, suggested that the jurors go home and continue their deliberations the following morning. The defendants excepted to the supplemental instruction as coercive and moved for a mistrial. The court denied the motion.

We think it is safe to say that to any competent and experienced trial judge, the foreman's note would mean nothing more than that the jury had been unable to agree on all issues and were split eleven to one on some issue. The note reasonably could not be taken to mean that the jurors were divided eleven to one on every issue submitted. The court was faced with the duty and responsibility of determining how long the jury should be required to deliberate before being discharged. Bowen was not the only person interested in the result of the trial. The interests of the government and the other defendants were involved. The trial had been a long and an expensive one both to the government and to the defendants. Another trial equally long and equally expensive was to be avoided, if possible. If the court had granted the motions of the defendants for a mistrial, that would have deprived Bowen's co-defendants of the verdicts of acquittal to which the jury found them entitled, and would have put all parties to the trouble and expense of retrying the case, without there being the slightest assurance that a second trial would benefit anyone. It would, we think, be a serious mistake to extend the rule of the Brasfield case to cover such a situation as that presented here. We fail to see why the unsolicited information furnished to the court by the foreman of the jury should cause a mistrial or should preclude the court from giving a proper supplemental instruction to the jury.

Our conclusion is that Bowen has had a fair trial and that there is no justification for setting aside his conviction.

The judgment appealed from is affirmed.