COMMONWEALTH of Pennsylvania,
Appellee

v.

Benjamin GREER, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 7, 2005.

Filed Feb. 14, 2006.

Reargument Denied April 24, 2006.

Mark S. Keenheel, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before: FORD ELLIOTT, LALLY-GREEN, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Benjamin Greer appeals the judgment of sentence imposed following his convictions of criminal conspiracy and aggravated assault. *See* 18 Pa.C.S. §§ 903, 2702 (respectively). Greer contends the trial court erred in not declaring a mistrial after two notes from the jury to the court disclosed that the jury could not agree on a verdict on all the charges. Specifically, the notes revealed the numerical breakdown of the jurors on the charges on which they could not agree and identified the jurors who had doubts about the evidence. Greer also contends that the trial court's supplemental instructions in response to the notes were coercive and led to the guilty verdicts. Greer finally contends that he was deprived of his Sixth Amendment right to counsel because the trial court did not reveal the full extent of the jury notes to defense counsel. We find Greer's assertions to have merit. Accordingly, we vacate Greer's convictions and remand the matter for a new trial.

¶ 2 The underlying facts in this case have been summarized by the trial court:

On February 5, 2004, Bin Zhang was working at the Golden Dragon Restaurant [in Philadelphia] when he received a telephone call requesting a food delivery. Mr. Zhang recognized the customer's telephone number as the same number that was used in a previous robbery. Mr. Zhang notified the police and Officer Gerald Moody responded to the call. Upon arriving at the Golden Dragon, Mr. Zhang explained to Officer Moody that he had just received a delivery request from a telephone number that was used by a customer on a prior occasion that resulted in a robbery. Officer Moody located officers from the Burglary Detail Unit and had them posted at the delivery address.

Thereafter, Officer Brian McMenamin set up surveillance in an unmarked vehicle on the 1600 block of Washington Lane. Officer McMenamin had received information that he was waiting for a delivery man to come to the location because there had been a prior robbery at the same location.

At the instruction of the police, Mr. Zhang took an empty box to the location. Upon arriving, two men approached Mr. Zhang and took his cell phone. One of the men escaped. However, when the defendant tried to escape, Mr. Zhang grabbed his clothing. Both the defendant and Mr. Zhang fell to the ground causing Mr. Zhang to break his ankle. Thereafter, the police were able to apprehend the defendant.

Trial Court Opinion (T.C.O.), 5/10/05, at 1–2 (citations omitted).

¶ 3 The Commonwealth charged Greer with robbery, aggravated assault, and criminal conspiracy. A jury trial commenced on February 8, 2005, and following two days of testimony, the Commonwealth and Greer rested their cases. The jury began deliberating on Thursday, February 10, 2005, at approximately 3:20 p.m. At 4:10 p.m., the jury was permitted to go home with instructions to return to continue deliberations the following day. The jury resumed its deliberations the next day. Initially, the jury sent out a note requesting that testimony be read back to them. The jury also asked for a clarification regarding the law on criminal conspiracy. The court read back the testimony and gave a supplemental instruction on criminal conspiracy. At approximately 12:30 p.m., the jury sent a note to the Honorable Gary S. Glazer which stated that the jury had reached a not guilty verdict on the charge of robbery, but was unable to reach a verdict on the criminal conspiracy and aggravated assault

charges. The note also stated that as to the criminal conspiracy charge, the jury was divided ten to two in favor of a guilty verdict, with jurors nine and ten voting not guilty. The note stated that jurors nine and ten had a reasonable doubt about the evidence. As to the aggravated assault charge, the jury was divided eleven to one in favor of a guilty verdict, with juror number ten voting not guilty. The court told counsel that it had received a note from the jury and that the jury had reached a verdict on the robbery charge but they were having a problem with reaching a verdict on the conspiracy and aggravated assault charges. Judge Glazer did not reveal the numerical division to either attorney. Judge Glazer then suggested giving a modified *Spencer* charge, *see Commonwealth v. Spencer*, 442 Pa. 328, 275 A.2d 299 (1971), which is a non-coercive charge given to deadlocked juries which instructs jurors to be true to their convictions and also to reconsider their original opinion. Both counsel agreed with the judge's decision. Thereafter, Judge Glazer told the jury about the importance of reaching a verdict and asked them to deliberate and try to resolve the areas of difference. Judge Glazer also said that the court does not expect people to surrender their deeply-held views only to reach a verdict. Following the *Spencer* charge, the jury requested additional testimony be read back to them and another instruction on the charge of criminal conspiracy. The court read back the requested testimony and supplied another instruction for the charge of criminal conspiracy.

¶ 4 At approximately 2:50 p.m., Judge Glazer received another note from the jury which explained why they could not reach a verdict on the aggravated assault and criminal conspiracy charges. The note explained that juror number nine had doubts about the police officers' testimony and the discrepancies between the police officers'

testimony and the victim's testimony. The note further explained that juror number ten was not convinced that the evidence actually established that the defendant was the perpetrator. Judge Glazer explained the contents of the note to counsel including the numerical division and the identity of the holdout jurors. Counsel and Judge Glazer then discussed various alternatives on how to proceed including taking the verdict on the robbery count and declaring a hung jury on the other two counts, bringing the jury back after the weekend for further deliberations, or giving another *Spencer* charge and allowing the jury to deliberate until 4:00 p.m., at which time the verdict would be taken. The judge decided this third choice was the best option. At 3:13 p.m., Judge Glazer instructed the jury to deliberate for a little longer and make their best effort to reach a verdict as they were close to an agreement. Judge Glazer further instructed the jury to not "surrender deeply-held beliefs just to get out of here and reach a verdict because that's not right." However, in these instructions, Judge Glazer also stated that "[t]his is not time for people to stand on ego," "you're close, but no cigar," and that the jurors are "serving the system and the community in an effort to reach a verdict." Finally, the court told the jury that they would not be kept over the weekend. The jury resumed its deliberations at 3:20 p.m. Greer's counsel objected to this second charge arguing that it was specifically directed at the two holdout jurors. Greer's counsel asserted that the jury should not be allowed to deliberate any further because the holdout jurors were identified. The court rejected this argument saying the charge was not directed at the holdout jurors but to the jury as a whole.

¶ 5 Subsequently, at 3:53 p.m., the jury was brought back into the courtroom and announced they had reached a unanimous

verdict on all charges. The jury found Greer not guilty of robbery and guilty of both criminal conspiracy and aggravated assault. The court recorded the verdict and dismissed the jury. Greer's counsel again raised an objection to the court having taken the verdict in light of the fact that the second *Spencer* charge was coercive and spoke only to the two holdout jurors. On February 22, 2005, Greer filed a written notice for extraordinary relief again asserting that the trial court should have declared a mistrial when the jury revealed its numerical division and the holdout jurors. The trial court denied this motion. On March 22, 2005, the trial court sentenced Greer to three to six years' incarceration for the aggravated assault conviction and a concurrent one to two years' incarceration for criminal conspiracy conviction.

¶ 6 Greer now appeals raising the following questions for our review:

I. WHETHER [THE] TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS [AND] EQUAL PROTECTION RIGHTS AND RIGHT TO COUNSEL IN FAILING TO DISCLOSE [THE] 12:30 PM NOTE AND 2:50 PM [NOTE] FROM JURY TO DEFENDANT AND COUNSEL[?]

II. WHETHER THE TRIAL COURT VIOLATED DEFENDANT [*sic*] DUE PROCESS [AND] EQUAL PROTECTION RIGHTS AND RIGHT TO COUNSEL IN FAILING TO DECLARE A MISTRIAL BASED ON [THE] CONTENTS OF NOTES[?]

III. WHETHER [THE] TRIAL COURT'S FURTHER INSTRUCTIONS AFTER RECEIVING BOTH NOTES EFFECTIVELY COERCED THE JURY INTO A VERDICT[?]

Brief for Appellant at 3.

¶ 7 The standard of review for determining whether a mistrial should have been granted is well-settled:

A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

An abuse of discretion is more than an error in judgment. On appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised by the trial court was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

*Commonwealth v. Tejeda*, 834 A.2d 619, 623 (Pa.Super.2003) (brackets, footnote, internal citations, and quotation marks omitted).

¶ 8 As all of the questions arise from the contents of the notes and the trial court's response, we will first address the second and third questions together. Greer argues that the trial court should have declared a mistrial when the jury gave the trial judge a numeric breakdown of its deliberations that identified the jurors in the minority. Brief for Appellant at 23. Greer maintains that this information combined with the subsequent jury charge coalesced to have a coercive effect on the holdout jurors. Brief for Appellant at 26.

¶ 9 When a jury is deadlocked, the resulting jury charge should follow the guidelines set forth by our Supreme Court in *Spencer*. The so-called *Spencer* charge should direct all jurors to consult with one

another in an effort to reach a unanimous decision without violence to individual judgment. 275 A.2d at 305. Moreover, the jury charge must not single out dissenting jurors, but instead, must be directed at all of the jurors. *See id.* at 303–04. If the trial judge's charge effectively coerces the jury's verdict, then the convictions will be reversed. *See id.* at 303.

¶ 10 In support of his proposition, Greer cites to *Brasfield v. United States,* 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926), which dealt with the coercive effects of a trial court asking a jury about the nature or extent of its numerical division. 272 U.S. at 449, 47 S.Ct. 135. In *Brasfield,* the trial court inquired as to how the jury was divided after the jury informed the court that it was unable to agree on a verdict. *See id.* The jury informed the judge that it was split nine to three, but did not indicate how many of the jurors were voting guilty and not guilty. *See id.* The jury resumed deliberations and returned with a guilty verdict. *See id.* The Supreme Court of the United States concluded that this inquiry warranted a reversal because the question was coercive and would generally improperly influence the jury. *See id.* at 450, 47 S.Ct. 135.

¶ 11 Greer contends that the *Brasfield* holding applies *per se* to the case at hand because the trial court had knowledge of the jury breakdown. While we find that Greer has a legitimate claim, we decline to follow *Brasfield* because *Brasfield* was decided by the Supreme Court of the United States in the exercise of its supervisory powers over federal courts. *See Lowenfield v. Phelps,* 484 U.S. 231, 239–40, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). Indeed, the Supreme Court of the United States has stated that *Brasfield* "makes no mention of the Due Process Clause or any other constitutional provision." *Lowenfield,* 484 U.S. at 240 n. 3, 108 S.Ct. 546. As

such, various federal courts of appeals have "rejected the notion that *Brasfield*'s *per se* reversal approach must be followed when reviewing state proceedings on habeas corpus." *Lowenfield,* 484 U.S. at 240 n. 3, 108 S.Ct. 546; *see e.g., Montoya v. Scott,* 65 F.3d 405, 412 (5th Cir.1995); *Jiminez v. Myers,* 40 F.3d 976, 980 n. 3 (9th Cir.1993); *Williams v. Parke,* 741 F.2d 847, 851 (6th Cir.1984). Moreover, a close reading of *Brasfield* indicates that the Supreme Court of the United States explicitly premised its holding in the case on facts which involve a trial court asking the jury for its division. 272 U.S. at 450, 47 S.Ct. 135. Here, the court did not inquire into the jury division, rather the jury willingly gave the judge the information. However, this does not end our inquiry into this matter as the Supreme Court of the United States in *Lowenfield* stated that *Brasfield* is still "instructive as to the potential dangers of jury polling." *Lowenfield,* 484 U.S. at 240. 108 S.Ct. 546.

¶ 12 In *Lowenfield,* the trial court asked the members of the jury to vote in individually written secret ballots whether they thought further deliberations would lead to a verdict. *See id.* at 234–35, 108 S.Ct. 546. Eleven out of the twelve indicated a positive answer while one indicated a negative one. *See id.* The trial court, using these results, gave another charge to the jury which produced a verdict after thirty minutes. *See id.* The Supreme Court of the United States ruled that this type of polling was sanctioned by *Brasfield.* *See Lowenfield,* 484 U.S. at 240, 108 S.Ct. 546. The Court further noted that the combination of this particular instruction along with the polling of the jury was not coercive in a way to deny Lowenfield his constitutional rights. *See id.* at 241, 108 S.Ct. 546. The holding demonstrates a willingness by the Supreme Court of the United States to decide each case on its own facts. *See id.* The holding in *Lowenfield* also

indicates that some supplemental instructions and jury polling will result in a violation of constitutional rights while others may not. *See id.*

¶ 13 Two cases from the United States Court of Appeals for the Ninth Circuit, while not precedential in this Commonwealth, delineate a test, using the *Brasfield* reasoning, to determine whether a jury is coerced into giving a verdict where knowledge of a hung jury's split is volunteered to the trial court. In *United States v. Sae–Chua,* 725 F.2d 530 (9th Cir.1984), a jury informed the trial court that they were deadlocked 11–1 in favor of guilt. 725 F.2d at 531. The trial court then brought the jury into the courtroom and conducted a poll to determine whether they thought further deliberations would produce a verdict. *See id.* All but one, presumably the lone dissenter, said they thought further deliberations would lead to a unanimous verdict. *See id.* The court gave a modified charge to the jury and later in the day, the jury came back with a unanimous verdict of guilty. *See id.* The Court of Appeals for the Ninth Circuit reversed stating:

> The judge [ ] would have been aware not only of the numerical division and the fact that a majority of eleven favored conviction, but of the identity of the sole dissenter. The dissenting juror was aware of the fact that the judge possessed this knowledge. Under these circumstances the charge could only be read by the dissenting juror as being leveled at him. He could hardly escape reasoning that the judge was not likely to believe that he could persuade the opposing eleven to adopt his position ...; and that he, individually, was being urged by the judge to reconsider his vote.... [T]he giving of the charge un-der these circumstances was coercive and constituted reversible error.

*Id.* at 532.

¶ 14 In *United States v. Ajiboye,* 961 F.2d 892 (9th Cir.1992), the Ninth Circuit further interpreted *Sae–Chua.* In *Ajiboye,* the deliberating jury sent a note to the trial judge indicating the jury was split 9–3 to convict on one count and 9–3 to acquit on the other. 961 F.2d at 893. After the judge gave a modified charge, the jury requested the re-reading of testimony. *See id.* The following day, the jury came back with guilty verdicts on both counts. *See id.* The Court of Appeals distinguished this case from *Sae–Chua,* concluding that the jury was not coerced into a verdict as the court did not know the holdout jurors' identity. *See id.* at 894. The Court of Appeals further stated that where the holdout jurors' identity is not known to the trial court at the time the charge is made, no juror could think that the charge was delivered specifically to him or her. *See id.; see also United States v. Lorenzo,* 43 F.3d 1303, 1307 (9th Cir.1995) (concluding that the anonymity of the dissenting jurors was an important factor in concluding that the jury charge was not impermissibly coercive). The Court concluded that the jury could not have been impermissibly coerced by the given charge. *See Ajiboye,* 961 F.2d at 894. The Court listed certain factors to look at when determining whether a jury charge following a note from the jury to the judge indicating its division was coercive. *See id.* These factors include: the length of time the jury deliberated following the jury charge; whether the jury asked for testimony to be read back after the trial court gave the jury charge; and whether part of the judge's instructions told the members of the jury to not "surrender an honest conviction as to the weight and effect of the evidence simply to reach a verdict." *Id.*

¶ 15 In the case at bar, the facts demonstrate that the jury deliberated for approximately a half-day before informing the judge, by a note at 12:30 p.m., that it had reached a decision as to one charge but was deadlocked 10–2 on one charge and 11–1 on the other charge. The note also indicated which specific jurors were in the minority. The judge did not inform counsel on either side about the contents of said note aside from stating that the jury had reached a verdict on one charge and they were having problems with the other two. Notes of Transcript ("N.T."), 2/11/05, at 71. Judge Glazer then gave the jury the initial *Spencer* charge. N.T., 2/11/05, at 72–75. The trial court never instructed the jury not to deliver another note describing the jury division. After the court gave the charge, the jury asked for trial testimony to be re-read and additional instructions be given as to the charge of criminal conspiracy. N.T., 2/11/05, at 76–85.

¶ 16 Following further deliberations, the jury again came back to the court with another note at 2:50 p.m. which again indicated the divisions in the jury and again singled out the holdout jurors. Judge Glazer read the contents of the note to counsel on both sides including the identity of the two holdout jurors. After consulting with counsel, the court decided to keep the jurors until 4:00 p.m. to determine whether they could reach a verdict. N.T., 2/11/05, at 86. Before sending the jurors out to deliberate, Judge Glazer gave another charge. This charge states in relevant part:

> I'm just going to ask that you go back for a little bit. What this indicates to me is either someone is not talking or someone is not listening. And, you know, I mean you owe that to the parties here.
>
> \* \* \* \* \* \*

Now, you're almost there. You're there on one count. But we need your best efforts. We need you to talk. This is not time for people to stand on ego. There's people's lives that are depending on your verdict and on your participation, if you can fairly do so. If you can.

And there's always that caveat because, as I said, you know—this is probably the third or fourth time—don't ask people to surrender deeply-held beliefs just to get out of here and reach a verdict because that's not right.

On the other hand, each of you has views and just judging by what the note says, you're close, but no cigar. So we need you to go back and try to do and resolve this case.

I mean that's—we've been here almost a week. It's a lot of time. It's a lot of your time. I'm here everyday, I work here. But you are serving the system and the community in an effort to reach a verdict, if you can fairly do so.

So I'm going to ask you to go back. We're not going to keep you here over the weekend. Don't worry about that. We're going to ask you to go back and try because I think you can do it. But just keep an open mind. Listen to each other. Okay? Go on.

N.T., 2/11/05, at 87–90.

¶ 17 The judge's second anti-deadlock charge must be viewed in its context and under all of the circumstances of this case to determine whether it was coercive. *See Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965). Initially, we note that the trial court had been told twice by the jury that a majority of the jurors favored conviction and the trial court also knew the identity of the holdout jurors. Moreover, the holdout jurors were aware of the fact that the judge

knew their identities having given the court a note not only outlining the divisions of the jury but also the reasons the jurors did not favor convicting Greer.

¶ 18 During the second charge, the trial court did instruct the jury to keep their long-held beliefs and not to give them up for any reason. N.T., 2/11/05, at 89. However, the judge also stated that "each [juror] has views and judging by what the note says, you're close but, no cigar," and that "[t]his is not time for people to stand on ego." N.T., 2/11/05, at 89 (emphasis added). Moreover, the judge also told the jurors that they "are serving the system and the community in an effort to reach a verdict," and to "listen to each other." N.T., 2/11/05, at 89–90. Although under ordinary circumstances this type of charge would not be coercive, here, the judge knew from the two notes about the jury's division that the majority favored a conviction and the identity of the holdout jurors. The fact that the judge knew the identity of the holdout jurors casts this instruction as a whole in a different light and shows it to be directed specifically at the holdout jurors. *See Sae–Chua*, 725 F.2d at 532 (concluding that were the judge possessed knowledge of the identity of the dissenting juror, the resulting charge could only be seen by this juror to be leveled at him). It can hardly "escape reasoning that the judge was not likely to believe that [the holdout jurors] could persuade the opposing [ten jurors] to adopt [their] position[.]" *Sae–Chua*, 725 F.2d at 532. Moreover, the jury deliberated for only thirty-three minutes following the second charge and did not ask for any testimony to be re-read before coming back with a verdict as to all of the charges. Looking at these factors in the totality, we conclude that the charge given under these circumstances was coercive and constitutes reversible error.

¶ 19 As we have found merit in Greer's assertions, we find no need to reach the merits of his first question. Therefore, for the foregoing reasons, we vacate the judgment of sentence and remand the matter for a new trial.

¶ 20 Judgment of sentence VACATED. Case REMANDED for a new trial. Jurisdiction RELINQUISHED.

¶ 21 LALLY–GREEN, J., files a Dissenting Statement.

LALLY–GREEN, J., Dissenting.

¶ 1 Because I would conclude that the trial court's instruction was not coercive, I respectfully dissent from the majority's well-reasoned opinion. The majority reasons that the trial court's instruction was improper in light of its wording and in light of the court's knowledge of the jury's division. I believe that, under the totality of the circumstances, the trial court's supplemental instruction pursuant to *Commonwealth v. Spencer*, 442 Pa. 328, 275 A.2d 299 (1971), was within the bounds of the law. Accordingly, I would affirm the trial court's judgment of sentence.

¶ 2 In *Spencer*, our Supreme Court set forth the proper standards for a supplemental charge to a deadlocked jury:

(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury: (i) that in order to return a verdict, each juror must agree thereto; (ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment; (iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors; (iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his

opinion if convinced it is erroneous; and (v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict. (b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a).

*Id.* at 305, n. 7. The *Spencer* Court rejected the traditional *Allen*[1] charge that had been employed in the federal courts for many decades. Our Supreme Court found the traditional *Allen* charge problematic in that its language appears to be directed specifically at minority jurors. The guidelines set forth in *Spencer* allow a trial court to issue a supplemental charge that is not directed specifically at minority jurors. *See also, Commonwealth v. P.L.S.,* 2006 PA Super 20 (February 2, 2006).

¶ 3 In *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), discussed in detail in the majority opinion, the United States Supreme Court concluded that the following charge was not directed at minority jurors:

> Ladies and Gentlemen, as I instructed you earlier if the jury is unable to unanimously agree on a recommendation the Court shall impose the sentence of Life Imprisonment without benefit of Probation, Parole, or Suspension of Sentence.
>
> When you enter the jury room it is your duty to consult with one another to consider each other's views and to discuss the evidence with the objective of reaching a just verdict if you can do so without violence to that individual judgment.
>
> Each of you must decide the case for yourself but only after discussion and impartial consideration of the case with your fellow jurors. You are not advocates for one side or the other. Do not hesitate to reexamine your own views and to change your opinion if you are convinced you are wrong but do not surrender your honest belief as to the weight and effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

*Id.* at 235, 108 S.Ct. 546.

¶ 4 I would conclude that the trial court's charge is consistent with the guidelines set forth in *Spencer*. The trial court simply informed the jurors that they should listen to one another and use their best efforts to resolve the case, if possible, without sacrificing their own deep beliefs. The trial judge did not direct his comments to the minority jurors. Furthermore, the charge at issue in *Lowenfeld* is strikingly similar to the charge at issue in the instant matter. The trial judge instructed the jury not to "stand on ego," but further not to "surrender deeply-held beliefs...because that's not right." N.T., 2/11/05, at 88–90. The trial judge further charged: "But you are serving the system and the community in an effort to reach a verdict if you can fairly do so." *Id.* (emphasis added). In my view, there is little substantive difference between the instant charge and the charge at issue in *Lowenfeld*. I do not believe that the trial court's supplemental charge was directed at minority jurors.

¶ 5 Moreover, I am not persuaded that the jury's unsolicited disclosure of its division warrants a new trial. Several federal circuit courts have determined that a jury's unsolicited disclosure of its division does not preclude a trial judge from giving an otherwise unobjectionable charge. *See,*

---

**1.** *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

e.g., *United States v. Norton,* 867 F.2d 1354 (11th Cir.1989); *Butler v. United States,* 254 F.2d 875 (5th Cir.1958); *Bowen v. United States,* 153 F.2d 747 (8th Cir. 1946). The *Bowen* Court reasoned that an appropriate supplemental charge may serve to avoid the time and expense of a re-trial, especially since there is no guarantee that a retrial will produce a less divided jury. *Bowen,* 153 F.2d at 752. The Court concluded that unsolicited information from the jury is not sufficient in and of itself to warrant a retrial. *Id.* Likewise, the Eleventh Circuit in *Norton* concluded that the trial court's supplemental instruction was permissible in that it was not "an exhortation of the minority to reexamine its views in deference to the majority...." *Norton,* 867 F.2d at 1366. These cases argue persuasively that a trial judge's knowledge of the jury's division is simply one factor to be considered in determining the legality of a supplemental charge.

¶ 6 The majority relies upon *United States v. Sae–Chua,* 725 F.2d 530 (9th Cir.1984), as persuasive authority for its disposition of this matter. In *Sae–Chua,* as well as in the instant matter, the judge was aware of the minority juror's identity. Likewise, the juror was aware that the judge knew the juror's identity. While I agree with the majority that these are significant factors to be considered in determining whether a supplemental charge coerced a verdict, I do not believe they are sufficient to warrant a reversal in the instant matter. That the trial judge did not inquire as to the jury's division should, in my view, carry significant weight. In addition, I believe that an appellate court should be wary of speculating that the psychological effect of a *Spencer* charge was to coerce minority jurors to surrender to the majority view, especially where the explicit terms of the charge comply fully with the *Spencer* guidelines. The trial judge gave an instruction that, in my view,

complies in all respects with *Spencer.* Therefore, I do not agree that Appellant is entitled to a new trial.

¶ 7 For the foregoing reasons, I respectfully dissent.